IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTIAN ENRIQUEZ, individually, and for others similarly situated

Plaintiff,

v.

SUNDT CONSTRUCTION, INC.,

Defendants.

Case No. 3:24-cv-01569-JR

FINDINGS AND RECOMMENDATION

RUSSO, Magistrate Judge:

Defendant Sundt Construction, Inc. moves for summary judgment on plaintiff Christian Enriquez's claims pursuant to Fed. R. Civ. P. 56. For the reasons stated below, defendant's amended motion is granted.

**BACKGROUND**

Plaintiff brings this putative collective action pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207, for failure to pay overtime wages alleging that defendant excluded certain fringe benefits from the overtime calculation.

On January 9, 2019, defendant entered into a public works contract ("general contract") with the Tualatin Valley Water District ("the district") and the City of Hillsboro ("the city") to design, develop, and construct a new water supply system ("the Willamette Water Supply System"). To pay for the Willamette Water Supply System, the district and the city obtained loans from the United States Environmental Protection Agency ("EPA") via the Water Infrastructure Finance and Innovation Act ("WIFIA"), which is an EPA operated "bank that provides . . . credit assistance to public . . . borrowers for all types of wastewater, drinking water, and stormwater projects." ABOUT THE WIFIA PROGRAM, https://www.epa.gov/wifia/about-wifia-program (last visited May 26, 2026). *See also* 33 U.S.C. § 3905 ("projects [that] may be carried out with amounts made available under" WIFIA include projects for "for repair, rehabilitation, or replacement of a treatment works, community water system, or aging water distribution or waste collection facility").

WIFIA provides that "[s]ection 513 of the Federal Water Pollution Control Act (33 U.S.C. 1372) applies to the construction of a project carried out, in whole or in part, with assistance made available through a Federal credit instrument under" WIFIA "in the same manner that section applies to a treatment works for which a grant is made available under that Act." 33 U.S.C. § 3909(h). The Federal Water Pollution Control Act ("FWPCA"), 33 U.S.C. § 1372, in turn, provides that "laborers and mechanics employed by contractors or subcontractors on treatment works for which grants are made under this chapter shall be paid wages at rates not less than those prevailing for the same type of work on similar construction in the immediate locality, as determined by the Secretary of Labor, in accordance with sections 3141-3144, 3146, and 3147 of Title 40" (the Davis-Bacon Act). Thus, projects funded by WIFIA are subject to the provisions and requirements of the Davis-Bacon Act ("DBA").

To facilitate the design, development and completion of the Willamette Water Supply System, the district and the city formed the Willamette Water Supply System Commission ("commission"). On February 11, 2022, the commission and defendant executed an amendment to the general contract that provided defendant was "required to comply with certain Federal requirements as a condition of [WIFIA] funding," including the DBA. Bradford Decl. Ex. 2 at 13, 16(kk) (40 U.S.C. § 3141-3144, 3146 and 3147) (doc. 38). The amendment also incorporated the provisions of the DBA.

The Willamette Water Supply System is also subject to the Contract Work Hours and Safety Standards Act ("CWHSSA"), 40 U.S.C. §§ 3701-3708, which applies to federally-funded public work projects in excess of $100,000. 40 U.S.C. § 3701. *See also* Bradford Decl., Ex. 2 at 35-36 (doc. 38).

As a result of WIFIA, FWPCA, and the amendment to the general contract, the wage provisions of the DBA govern the wages and overtime for the Willamette Water Supply System project.

The United States Department of Labor sets the wages for employees working on projects subject to DBA wage provisions ("wage determination"). *See* 29 C.F.R. § 5.5(a)(1)(i). Regulations provide that wage determinations on projects subject to the DBA include two components for each class of worker: a base rate and a fringe rate. *Id.*

On September 16, 2021, defendant received the wage determination for the Willamette Water Supply System project. Bradford Decl. Ex. 4 (doc. 38).[1] The Department of Labor required concrete laborers on the project to be paid $32.71 per hour for the base wage rate and $15.40 per

[1] Defendant identifies this as exhibit 4 to Bradford's declaration, but the footer for the document states "exhibit 8." To avoid confusion because there is also an exhibit 8 to Bradford's declaration, the Court refers to this as exhibit 4.

hour for the fringe rate. *Id*. at 88. At that time, the Oregon prevailing wage law required a higher wage rate of $34.71 per hour for the base wage rate and $16.05 per hour for the fringe rate. *Id.* at 53.

On June 19, 2023, plaintiff began working for defendant as a concrete laborer. Defendant paid plaintiff a base rate of $34.71 per hour and a fringe rate of $16.05 per hour.[2] The fringe rate consisted of $9.82 per hour in "cash in lieu of fringe" pay and $6.23 per hour for contributions for fringe benefits. On April 22, 2024, defendant increased plaintiff's base rate to $36.71 per hour. Plaintiff stopped working for defendant on July 12, 2024. Gibson Decl. Ex. 4 at 1 (doc. 37).

On September 16, 2024, plaintiff filed a putative class action alleging defendant failed to pay plaintiff and all hourly Sundt employees who were paid "cash in lieu of fringe" during the previous three years sufficient overtime wages in violation of the FLSA and Oregon wage and hour law.

On January 6, 2025, plaintiff filed an amended complaint alleging defendant failed to pay plaintiff and similarly situated employees sufficient overtime in violation of the FLSA.

Defendant moves for summary judgment on plaintiff's claim.

## STANDARDS

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a

[2] Defendant based plaintiff's base and fringe rates on the higher prevailing wage rate under Oregon state law. Bradford Decl. Ex. 4 at 53 (doc. 38).

reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630.

**DISCUSSION**

Defendant moves for summary judgment arguing that it paid plaintiff sufficient overtime wages or if it did not pay plaintiff sufficient overtime wages, plaintiff's claim is barred by defendant's good faith reliance on the Department of Labor's regulations, agency interpretations, and agency practices.

## I. Overtime Wages

Plaintiff alleges that defendant failed to pay him sufficient overtime wages because defendant's calculation excluded certain "hourly differentials and additional cash pay" from the regular rate of pay. Am. Compl. ¶¶ 43-46, 61 (doc 24). Plaintiff alleges defendant failed to properly calculate plaintiff's overtime wages because defendant paid plaintiff overtime at the rate of 1.5 times his "base hourly pay" of $34.71 per hour before April 22, 2024, and 1.5 times $36.71 per hour after April 22, 2024 rather than at a rate of 1.5 times his "base hourly pay" per hour plus the

hourly amount of cash fringe[3] and "wellness EE." *Id*. Defendant moves for summary judgment on the basis that exclusion of cash fringe and wellness EE from the calculation of base wages when calculating overtime is not a violation of the FLSA.

Defendant explains that the item designated "wellness EE" on plaintiff's paycheck arises from defendant's wellness credit program, which enables employees to receive a reduction in their medical plan premiums after they meet certain criteria. Gibson Decl. Ex. 3 at 12 (doc. 37). Under the wellness credit program, employees can "earn $139 per month in wellness credits to offset medical premiums." *Id*. The wellness credit program is voluntary and only those employees who meet the program's requirements receive the credit. Gibson Decl. Ex. 7 (doc. 37).

The item designated "cash fringe" on plaintiff's paycheck arises from defendant's cash fringe benefit package, which is "an extra benefit that supplements an employee's total compensation package on public work that is federally and/or state funded" and includes "Health Insurance, Holidays, Training, ESOP [employee stock option plan], Sick Leave, and Vacation" as well as payment "in cash" in lieu of certain other benefits. Gibson Decl. Ex. 2 (doc. 37). The cash in lieu of benefits portion of defendant's fringe benefits package is reduced to the extent that an eligible employee enrolls in other "medical benefits . . . offered to" defendant's employees.[4] *Id.* Thus, when an employee elects to enroll in certain fringe benefits rather than take the cash fringe pay for that benefit, the employee's cash fringe pay is reduced by the amount attributable to the benefit that employee has elected to enroll in. Enrollment in all of the available benefits would reduce an employee's cash fringe pay to zero. *Id.*

---

[3] Plaintiff calculates this as the amount set out as "cash fringe" in plaintiff's paystub divided by the total number of hours plaintiff worked in that pay period. *See, e.g.,* Am. Compl. ¶¶ 53, 60.

[4] Certain benefits such as paid time off ("PTO") and ESOP "are automatically applied" to the cash fringe benefit package "once eligibility criteria are met, resulting in a reduction of . . . cash fringe." *Id.* Thus, employees do not have the option to waive enrollment in PTO or the ESOP.

The DBA provides that minimum wages "shall be based on the wages the Secretary of Labor determines to be prevailing for the corresponding classes of laborers . . . employed on projects[.]" 40 U.S.C. § 3142(b). An employer may satisfy "the prevailing wage determination of the Secretary of Labor" by (1) making payments in cash (including cash payments in lieu of fringe benefits); (2) making contributions for fringe benefits under a benefit plan or program; (3) bearing the cost of a benefit plan or program; or (4) any combination of cash payments, benefit contributions, or assumption of benefit plan/program costs. 40 U.S.C. § 3142(d); 29 C.F.R. § 5.31(a). *See also* 29 C.F.R. § 5.32(c)(1) (the DBA "permits a contractor . . . to pay a cash equivalent of any fringe benefits found prevailing by the Secretary of Labor.").

The DBA sets out two methods of calculating overtime for projects governed by the DBA:

> In determining the overtime pay to which a laborer . . . is entitled under any federal law, the regular or basic hourly rate of pay (or other alternative rate on which premium rate of overtime compensation is computed) of the laborer or mechanic is deemed to be the rate computed under [40 U.S.C. §] 3141(2)(A) . . ., except that where the amount of payments, contributions, or costs incurred with respect to the laborer . . . exceeds the applicable prevailing wage, the regular or basic hourly rate of pay (or other alternative rate) is the amount of payments, contributions, or costs actually incurred with respect to the laborer or mechanic minus the greater of the amount of contributions or costs of the types described in section 3141(2)(B) of this title actually incurred with respect to the laborer or mechanic or the amount determined under section 3141(2)(B) of this title but not actually paid.

40 U.S.C. § 3142(e). Under the first method, the basic hourly rate of pay from which overtime is to be computed is set out in 40 U.S.C. § 3141(2)(A), which provides that "[t]he terms 'wages,' . . . and 'prevailing wages' include - (A) the basic hourly rate of pay." 29 C.F.R. § 5.24 expressly states that "'[t]he basic hourly rate of pay' . . . does not include fringe benefits." Thus, under the first method, fringe benefits are not included in the calculation of overtime wages.

The second method is less straight forward, but the legislative history of the DBA explains that this method is used only when the fringe benefits actually provided to the laborer exceed the

required fringe benefit required by the Secretary of Labor in the wage determination.[5] In that case, the greater of the two (the required fringe benefit or the provided fringe benefit) is excluded from the calculation of overtime. H.R. REP. NO. 88-308, at 92 (1963). *See also Reilly v. Century Fence Co.*, 580 F. Supp. 3d 578, 584 (W.D. Wis. 2022) ("the court concludes that an employer applying the second definition may exclude from the regular hourly rate the larger of the following two things: (1) its contributions and costs to a plan; or (2) the cash payments made to an employee in lieu of contributions and costs to a plan"). This second method was included to prevent an employer from being penalized when paying fringe benefits that exceed the amount required by the Secretary. *Id.* ("it may be related to a concern that employers would otherwise avoid paying a higher overtime rate by designating a disproportionate share of wages as cash fringe rather than the hourly rate) (citing 1964 U.S.C.C.A.N. 2339, 2344) (Senate report discussing concerns about "the possibility that this provision might be used to avoid compliance with the act")). This second method "allows [employers] to exclude . . . cash fringe payments from the regular rate of pay so long as those payments are larger than [their] § 3141(2)(B) costs and contributions." *Id.* Thus, under either method the DBA provides that fringe benefits should be excluded from the calculation of overtime.

In addition, the regulations provide that the DBA "*excludes* amounts paid by a contractor . . . for fringe benefits in the computation of overtime under the Fair Labor Standards Act . . . whenever the overtime provisions of any of [that] statute[] apply concurrently with the [DBA] or its related prevailing wage statutes." 29 C.F.R. § 5.32(a) (emphasis added). The Fourth Circuit explained the interplay between the DBA and the FLSA when calculating overtime:

---

[5] Defendant paid plaintiff more in fringe benefits than was required by the wage determination of the Secretary, therefore, the second method applies.

> [T]he DBA's directives to use the prevailing cash rate and to exclude fringe benefits when calculating overtime dovetail with the FLSA's overtime computation. . . . [T]he FLSA and DBA both require the exclusion of fringe benefits when calculating overtime. See 29 U.S.C. § 207(e) (precluding fringe benefits from the "regular rate" determination under the FLSA); 40 U.S.C. §§ 3141(2)(A), 3142(e) (directing overtime "under any federal law" to be computed using the DBA's "basic hourly rate of pay" and not fringe benefits); *see also* 29 C.F.R. § 5.32(a) ("The [DBA] excludes amounts paid by a contractor or subcontractor for fringe benefits in the computation of overtime under the [FLSA] [and] the [CWHSSA] . . . whenever the overtime provisions of any of these statutes apply concurrently with the [DBA.]").

*Amaya v. Power Design, Inc.*, 833 F.3d 440, 447 (4th Cir. 2016). Accordingly when the FLSA requires that "overtime be 'not less than one and one-half times the regular rate at which [the worker] is employed,' 29 U.S.C. § 207(a)(1), [the court] supplant[s] 'regular rate' with the DBA's prevailing basic hourly rate. This statutory interplay creates no conflict between the acts." *Id.*

Plaintiff contends that the fringe payments here do not qualify under 40 U.S.C. § 3141(2)(B); *i.e.,* the second methodology for calculating overtime under the DBA, because fringe payments only qualify under that methodology when "'the contractor . . . is **not** required by other federal, state, or local law to provide any of those benefits,'" thus, fringe benefits "that **are** 'required by other . . . state . . . law' **cannot**" be "subtracted when calculating the appropriate rate for overtime." Pl. Resp. 6 (emphasis in original) (doc. 50). Plaintiff notes that Oregon law "requires a higher rate than the 'prevailing wage' under the DBA . . . [a]nd [defendant] paid [plaintiff] according to the higher wage rate." *Id.* 8. According to plaintiff, "[t]he higher rates [defendant] actually paid to [plaintiff] give rise to claims under the FLSA." *Id.* As defendant points out, however, § 3141(2)(B) simply defines "wages" under the DBA for purposes of determining whether an employer has satisfied its prevailing wage obligations, it does not address calculation of overtime under the FLSA. In addition, § 3141(2)(B) does not state that fringe benefits "required by other federal, state, or local law" must be included in the regular rate under the FLSA. Rather,

it provides that "other bona fide fringe benefits" (in addition to those listed) may only be included in the definition of "wages" under the DBA to the extent that they are "not required by other federal, state, or local law." Thus, if a fringe benefit that is not "considered to be common in the construction industry as a whole" is required by a federal, state, or local law other than the DBA, it may not be considered part of the "prevailing wages" received by the employee and "[n]o credit may be taken under the act for the payments made for such benefits." 29 C.F.R. § 5.29(a) and (f). Accordingly, fringe benefits that are exclusively required under an unrelated federal, state or local law may not be used to satisfy an employer's prevailing wage obligations under the DBA. Plaintiff argues the opposite - that fringe benefits required under state law must be included as wages for purposes of calculating overtime. Plaintiff's argument is not supported by the DBA or its regulations.

Moreover, even if Oregon's prevailing wage law did apply to the calculation of overtime under § 3141(2)(B), Oregon also excludes fringe benefits from the calculation of overtime for work done by employees on public works projects. *See* OAR 839-025-0050(2)(a) (contractors "required by [state prevailing wage law] to pay overtime wages shall pay such wages as follows: Workers must be paid at least time and one-half the hourly rate of pay, excluding fringe benefits, for all hours worked").

Defendant, therefore, has established that no genuine dispute of material fact exists as to whether it paid plaintiff all of the overtime he was due. Accordingly, defendant's amended motion for summary judgment is granted on this basis.

## II. Immunity

Even if defendant has not established that it paid plaintiff all overtime to which he was entitled, defendant asserts plaintiff's claim is barred under 29 U.S.C. § 259(a), which provides in pertinent part:

> [N]o employer shall be subject to any liability or punishment for or on account of the failure of the employer to pay . . . overtime compensation under the [FLSA] . . . or the [DBA] if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation, order, ruling, approval, or interpretation, of [the Administrator of the Wage and Hour Division of the Department of Labor or the Secretary of Labor] . . . or any administrative practice or enforcement policy of such agency with respect to the class of employers to which he belonged. Such a defense, if established, shall be a bar to the action or proceeding[.]

"This statute insulates [an employer] from liability if it can show it acted in (1) good faith, (2) conformity with, and (3) reliance on the [Department of Labor's] regulations or the Administrator's Opinion Letter." *Frank v. McQuigg*, 950 F.2d 590, 598 (9th Cir. 1991).

Defendant asserts it is entitled to immunity from plaintiff's claim pursuant to § 259(a) because when calculating overtime, it relied on Department of Labor regulations and "rulings and interpretations" that were quoted, cited, and incorporated into the general and amended contracts, training, and other materials provided to defendant by the Department of Labor. Stephen Bradford, defendant's Pre-Construction Manager, testified that defendant relied on WIFIA program requirement documents that "expressly incorporated the rules and agency interpretations in 29 C.F.R. part 5." Bradford Decl. ¶¶ 5-6 (doc. 38). The "WIFIA Requirements . . . explained that under CWHSSA, overtime was defined as 'compensation at a rate not less than one and one-half times the basic rate of pay" and based on that provision, 29 C.F.R. § 5.32, and Department of Labor guidance materials on DBA payroll practices, defendant "understood . . . that the calculation of overtime did not include fringe benefits." *Id.* ¶ 6. *See also* Bradford Decl. Ex. 2 at 34

("Compliance with [DBA] and Related acts contained in 29 CFR parts 1, 3 and 5 are herein incorporated by reference in this contract"); *Id.* Ex. 3 at 25 (incorporating 29 CFR parts 1, 3 and 5 into contract); *Id.* Ex. 3 at 7, 8 ("Labor Standards" under 33 U.S.C. § 1372 and 40 U.S.C. §§ 3141-3144, 3146, and 3147 apply to the project); Ex. 6 at 8 (2018 Department of Labor seminar on overtime pay on government contracts materials obtained by defendant in connection with the requirements for the project that states "CWHSSA requires the payment of time and one-half of the 'basic rate' of pay for all hours worked in excess of 40 hours in a week. . . . However, if an employee is paid a regular rate above the basic hourly rate (*excluding fringe benefits or case payments in lieu of fringe benefits*), that regular rate will be considered the basic rate") (emphasis added)). The Department of Labor seminar materials include examples of the calculation of overtime wages under DBA and CWHSSA governed projects on which defendant relied. Each of those examples show calculation of overtime based solely on the basic hourly wage even when the basic hourly wage used is higher than the wage determination of the Secretary. *See* Bradford Decl. Ex. 6 at 20-21, 23 (doc. 38).

The Court concludes that defendant has established it acted in good faith and in conformity with Department of Labor regulations, interpretations, and/or administrative practices. Defendant, therefore, is immune from liability for plaintiff's claims pursuant to 29 U.S.C. § 259. Defendant's motion for summary judgment is also granted on this basis.

**RECOMMENDATION**

For the reasons stated herein, defendant's amended motion for summary judgment (doc. 46) should be granted and this matter should be dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal rules of Appellate

Procedure, should not be filed until entry of the district court's judgment or appealable order. The parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the court. Thereafter, the parties shall have fourteen (14) days within which to file a response to the objections. Failure to timely file objections to any factual determination of the Magistrate Judge will be considered as a waiver of a party's right to de novo consideration of the factual issues and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to this recommendation.

DATED this 11th day of June, 2026.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge